**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ALPINE TECHNOLOGY HOLDINGS LIMITED and SHENZHEN QIANHAI BOKAIMAI KEJI YOUXIAN GONGSI,<br><br>*Plaintiffs*,<br>v.<br><br>QISDA CORPORATION and BENQ CORPORATION,<br><br>*Defendants*. | Civil Action No. 3:24-cv-403<br><br>JURY TRIAL DEMANDED |

## <u>ORIGINAL COMPLAINT</u>

Plaintiffs Alpine Technology Holdings Limited ("Alpine") and Shenzhen Qianhai Bokaimai Keji Youxian Gongsi ("QBK") (collectively, "Plaintiffs") primarily seek a declaratory judgment of patent non-infringement against U.S. Patent No. 10,544,927 ("the '927 Patent") in relation to certain computer monitor light bar products, as defined herein ("Accused Products").

## INTRODUCTION

1. Over the past twenty years, online retailing has revolutionized how companies reach American consumers. The rise of e-commerce marketplaces combined with a dramatic increase in transportation speeds and improved logistic networks has allowed even relatively small companies to compete globally. These developments have generally increased competition and lowered prices.

2. The web domain "Amazon.com" hosts the Amazon Marketplace and its millions of product listings; it is U.S.-specific and targets American consumers. For an online retailer to effectively compete in the United States, it must sell on the Amazon Marketplace. According to

bigcommerce.com: "Each month more than 197 million people around the world get on their devices and visit Amazon.com. That's more than the entire population of Russia. In 2018, Amazon's share of the US e-commerce market hit 49%... that is more than Amazon's top three competitors combined, with eBay coming in at 6.6%, Apple at 3% and Walmart at 3.7%."

3. Nine out of ten American consumers use Amazon to price check products they find elsewhere, and roughly 95 million people have Amazon Prime memberships in the United States. Facing the considerable challenges of managing this sprawling hive of commercial activity, Amazon.com, Inc. established intellectual property complaint and enforcement systems for Amazon.com primarily designed to protect itself from contributory infringement liability. These include a patent infringement reporting mechanism and a binding pseudo-arbitration evaluation procedure currently known as the Amazon Patent Evaluation Express ("APEX"). Continued infringement reports hurt the health score of the seller accounts, which in turn lower listing visible, which in turn hurts sales.

4. In sum, after Amazon receives a patent infringement complaint, it contacts the accused Sellers and urges them to negotiate with the patent owner directly. If the patent owner initiates an APEX proceeding, the Seller may opt not to participate, but that refusal means Amazon will remove ("de-list") the accused product listings from the Amazon Marketplace.

5. An Amazon APEX is decided by a single neutral evaluator chosen by Amazon. Once begun, the process lasts only a few weeks. The evaluator is paid a fixed fee for the APEX, borne by the losing side. The patent owner identifies the accused products by ASIN No. and a single claim of one patent allegedly infringed. Each side is permitted one brief on infringement. The evaluator may not consider validity unless the asserted patent claim has already been ruled invalid by a court or by the U.S. Patent and Trademark Office ("USPTO").

6. Amazon's procedures require the evaluator to determine whether the patent owner is "likely to be able to prove" the accused products infringe the asserted claim. The evaluator does not explain their reasoning if they find for the patent owner but must provide a brief explanation if they rule against the patent owner. If the patent owner wins, Amazon de-lists the accused products until the parties notify Amazon that the dispute has been resolved and the infringement complaint withdrawn. There is no appeal process.

7. Amazon APEX proceedings are heavily weighted in favor of patent owners. They are not suited to evaluating complex technical issues, and the speed, limited scope, high stakes, and inability to appeal all place tremendous pressure on accused sellers to capitulate, particularly online retailers deriving most of their revenue from Amazon sales.

8. It is against this backdrop that Defendant BenQ Corporation ("BenQ") reported to Amazon meritless "Intellectual Property Violations" by the Accused Products, specifically alleging infringement of the '927 Patent and resulting in the potential delisting of the Accused Products.

9. Critically, Defendant BenQ does not appear to have title to the '927 Patent. According to the assignment records at the USPTO, the sole assignee of the '927 Patent is Defendant Qisda Corporation ("Qisda"). In this regard, BenQ is asserting rights in the '927 Patent with no standing, thereby tortiously interfering with Plaintiffs and causing significant harm to Plaintiffs' business.

## NATURE OF THE ACTION

10. This is an action for Declaratory Judgment of patent non-infringement arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the United States Patent Laws, 35 U.S.C. § 101 *et seq*. The state law claim of tortious interference is properly joined under

supplemental jurisdiction, 28 U.S.C. § 1367, because they are so related to the declaratory judgment claim of patent non-infringement that it forms part of the same case or controversy under Article III of the United States Constitution.

**PARTIES**

11. Plaintiff Alpine is a type of foreign limited liability company organized under the laws of the Hong Kong Special Administrative Region of the People's Republic of China. Alpine has a principal place of business at 610 Nathan Road, Hollywood Commercial Center Room 1318-19, Mong Kok, Kowloon, 999077 Hong Kong. Alpine sells electronic products exclusively on Amazon under the store name "Alpine US" (Seller ID: A2BPJY86WL2N0Z) and the trademark "Quntis."

12. Plaintiff QBK is a type of foreign limited liability company organized under the laws of the People's Republic of China. QBK has a principal place of business at Qianhai Shenzhen-Hong Kong Coop Zone, Room 201, Block A, No.1 Qianwan 1st Road, Shenzhen China. QBK sells electronic products exclusively on Amazon under the store name "Quntis Inc" (Seller ID: AURY2T3X4G86C) and the trademark "Quntis." QBK is the owner of U.S. Trademark Registration Nos. 6588847 and 5155056 for the standard character and stylized marks "Quntis" in the fields of environmental control and electrical apparatuses, respectively.

13. Upon information and belief, Defendant BenQ is a Taiwanese multinational electronics corporation with a principal place of business at 16 Jihu Road Neihu, Taipei 114 Taiwan. BenQ is believed to be the subsidiary of Qisda.

14. Upon information and belief, Defendant Qisda is a Taiwanese electronic equipment manufacturer corporation with a principal place of business at 157 Shan-Ying Road, Shan-Ting

Village, Gueishan District, Taoyuan City, Taiwan. Qisda is believed to be the parent corporation of BenQ.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) because it arises under the Patent Laws of the United States, 35 U.S.C. §§ 101 *et. seq*. Jurisdiction over the subject matter of this action is further provided under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

16. Defendants BenQ and Qisda are subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendants' substantial business in this State and District, including: regularly conducting and soliciting business, engaging in other persistent conduct, deriving substantial revenue from Texas residents, and enforcing patent rights here.

17. Venue is proper in this District pursuant to 28 U.S.C. 1391, as Defendants are foreign corporations not considered residents of the United States and therefore may be sued in any judicial district.

## THE ACCUSED QUNTIS PRODUCTS

18. Plaintiffs are e-commerce companies selling electronics on Amazon under the "Quntis" trademark. The Accused Products at issue are identified by ASIN Nos. B0B6P9J3J5, B08HMLKS2N, B08DKQ3JG1, and B0CKRJZBTX. Each ASIN sells Accused Products that are functionally equivalent.

19. The Quntis brand provides lighting products that combine convenience, efficiency, and sophisticated design. With a focus on ingenuity, Plaintiffs are dedicated to delivering lighting solutions that inspire and captivate. The Quntis brand story is of brightness, creativity, and an unwavering pursuit of an enriched life experience.

20. The Quntis brand takes pride in providing high-quality desktop lighting devices that prioritize the needs of offices, study spaces, gaming setups, and technology enthusiasts. Plaintiffs products offer enhanced comfort and promote a healthier lighting environment, empowering users to achieve optimal productivity and well-being. The Accused Products have auto-dimming, zero screen glare, and stepless dimming functionalities.




21. The Accused Products practice and are licensed under several U.S. Patents held by the manufacturer, Zhejiang Topmb Electrical Lighting Co. Ltd. The licensed patents include U.S. Design Patent Nos. D946,803 and D1,003,483 and U.S. Patent No. 11,268,653.

22. The Alpine US storefront has garnered 5 out of 5 customer rating stars. Similarly, the Quntis Inc storefront has garnered 4.9 out of 5 stars out of 15,353 lifetime global customer ratings.

23. The Amazon Marketplace constitutes Plaintiffs' primary sales channel into the United States. To remain competitive in the United States market for light bars, Plaintiffs need their products listed in the Amazon Marketplace.

24. Defendant BenQ's ability to use the APEX as an inequitable injunction significantly harm Plaintiffs. In addition to the direct effects of monetary losses, the delisting of products immediately results in lost sales numbers, product reviews, and product ratings, which are all important factors in determining their Amazon ranking. Amazon ranking is in turn important to product visibility in consumer searches and to Amazon's award of the "Amazon Choice" Badge or the "Amazon Bestseller" designations which create a significant sales boost. Plaintiffs' harms are only exacerbated by BenQ's apparent lack of standing to enforce the '927 Patent.

**U.S. PATENT NO. 10,544,927**

25. Defendant Qisda is the applicant and assignee of record of the '927 Patent. Exhibit A, '927 Patent. Critically, Defendant BenQ does not appear to have title in the '927 Patent, yet has asserted the '927 Patent on Amazon. Exhibit B, Patent Assignment.

26. The '927 Patent is entitled "Clamp Lamp And Displaying Device Therewith." The '927 patent generally discloses: "A clamp lamp including a light source, a first clamping part, and a second clamping part. The first clamping part has a first holding portion and a lamp connecting portion connected to the first holding portion. The light source is connected to the lamp connecting portion. The second clamping part has a second holding portion and a counterweight disposed on the second holding portion. The first holding portion and the second holding portion are movably

connected with each other. The clamp lamp is fixedly disposed on a structural edge by the first holding portion and the second holding portion clamping the structural edge; therein, the counterweight and the light source are located at two opposite sides of the structural edge, which is conducive to the balance of the clamp lamp on the structural edge." Exhibit A at Abstract.

27. The '927 Patent issued on January 28, 2020 and has en effective filing date of June 16, 2017. The '927 Patent has two independent claims and eighteen dependent claims, each claiming a clamp lamp and/or a displaying device.

**DEFENDANTS BENQ & QISDA**

28. Defendant BenQ is a Taiwanese corporation that sells and markets technology products, consumer electronics, computing, and communications devices. BenQ is a subsidiary of Defendant Qisda.

29. On or around February 1, 2024, BenQ filed an infringement report on Amazon against the Accused Products, therein asserting the '927 Patent. Exhibit C, Amazon Notice of Infringement Report.

30. The USPTO assignment records show that BenQ has no title in the '927 Patent, as it is owned solely by Qisda.

31. As a result of BenQ enforcing a patent in which it has no ascertainable title to, Plaintiffs' Accused Products face permanent delisting and have already suffered decreased visibility on the platform and decreased sales.

**CLAIM I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '927 PATENT**

32. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

33. An actual, continuing and justiciable controversy exists between Plaintiffs and Defendants as to the non-infringement of the '927 Patent, as evidenced by Defendants' allegations of infringement on Amazon, as set forth above.

34. Pursuant to the Declaratory Judgment Act, Plaintiffs requests a judicial determination and declaration that Plaintiffs do not infringe and have not infringed, either directly or indirectly, literally or under the doctrine of equivalents, any presumably valid claim of the '927 Patent.

35. For example, the Accused Products do not meet each and every limitation of independent claims 1 and 18. Likewise, since the independent claims are not infringed, neither are their dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9, 1553 (Fed. Cir. 1989) (a dependent claim cannot be infringed if any claim from which it depends is not infringed).

36. Regarding independent claims 1 and 18, the Accused Products do not comprise at least "a first clamping part, the first clamping part having a first holding portion and a lamp connecting portion connected to the first holding portion." In the '927 Patent, a first clamping part (12) has a first holding portion (122) and a lamp connecting portion (124) *connected* to the first holding portion (122). The lamp connecting portion (124) is connected to the first holding portion (122) to form the first clamping part (12). In this regard, the lamp connecting portion (124) and the first holding portion (122) are two independent pieces of the first clamping part (12).




FIG. 1

37. Further, the lamp connecting portion (124) and the first holding portion (122) are connected by first sliding part (1226). As shown in FIG. 2, the first sliding part (1226) is length adjustable (shown in dotted lines) to provide distance between the light source (1) and the first holding portion (122).




FIG. 2

38. Further, as shown in FIG. 3, the lamp connecting portion (124) and the first holding portion (122) are clearly two separate pieces connected by the first sliding part (1226) into a receiving portion (shown in dotted lines) of the first holding portion (122).




FIG. 3

39. In the Accused Products, in contrast, the analogous lamp connecting portion is not connected to the first holding portion within the meaning of claim 1 because the two pieces are indeed a unitary piece. In this regard, there is no need to connect pieces that are already a unitary piece.

40. This construction of connected is consistent with how the verb is used elsewhere in the patent, even in other limitations of claims 1 and 18. For example, claims 1 and 18 further recite: “the light source being directly connected to the lamp connecting portion.” Here, the light source (10), a separate piece, is connected to the lamp connecting portion, another separate piece, to form a clamp lamp (1). Another example in claims 1 and 18 is “the first holding portion and the second

holding portion being movably connected with each other." Again, the first holding portion and the second holding portion are two separate pieces connected to each other.

41. Regarding claim 18 specifically, the Accused Products further do not comprise at least the limitations of "a displaying device" and "an outer casing." To begin, the Accused Products are not a displaying device, a phrase that finds no support in the specification. Further, an outer casing (22) refers to the outer casing of a monitor of a desktop or notebook computer. The Accused Products do not comprise a computer monitor.

**CLAIM II: TORTIOUS INTERFERENCE WITH CONTRACT**

42. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

43. The elements of tortious interference with a contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

44. Here, Plaintiffs have contractual relationships with Amazon to list and sell the Accused Products on the Amazon Marketplace. With actual knowledge of the contractual relationship, Defendant BenQ, with no ascertainable title in the '927 Patent, submitted infringement reports to Amazon against the Accused Products. Such inequitable contact proximately caused Plaintiffs' injuries by, at the minimum, hurting the ranking of Plaintiffs' listings within the Amazon algorithm and the seller account health scores. Such interference has caused actual damages to Plaintiffs' in the form of lost sales.

45. Defendant BenQ's interference is exceptionally fragrant since BenQ has no ascertainable title in the '927 Patent. Under the Patent Act, a "patentee shall have remedy by civil

action for infringement of his patent." 35 U.S.C. § 281. The term patentee includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). Where the patentee assigns all substantial rights under the patent, the assignee may have standing to sue for patent infringement in its own name. *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). Thus, under the Patent Act, "the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot." *Id*. Here, BenQ is inequitably and unjustifiably enforcing patent rights with no ascertainable title therein to stifle competition in the marketplace.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment as follows:

A. Preliminary and permanent injunctions ordering Defendants to withdraw all Amazon infringement complaints lodged against the Accused Products regarding the '927 Patent, and to refrain from lodging any further infringement complaints regarding the same.

B. A declaration that the Accused Products do not infringe any of the presumably valid claims of the '927 Patent;

C. A finding that Defendant BenQ tortiously interfered with Plaintiffs' contractual relationship with Amazon by asserting the '927 Patent with no standing and an award of damages thereon;

D. A declaration that this case is exceptional and an award to Plaintiffs' of their costs, expenses, and reasonable attorney fees incurred in this action pursuant to 35 U.S.C § 285; and

E. Such further and additional relief as the Court deems just and proper.

Dated: February 20, 2024

Respectfully submitted,

/s/ *Nicholas Najera*
Timothy T. Wang
Texas Bar No.: 24067927
Nicholas Najera
Texas Bar No.: 24127049

Ni, Wang & Massand, PLLC
8140 Walnut Hill Lane, Suite 615
Dallas, TX 75231
972.331.4603
972.314.0900 (facsimile)
twang@nilawfirm.com
nnajera@nilawfirm.com

*Counsel for Plaintiffs*